# SUPREME COURT.

## WILLIAM W. HURLBUT and others agt. ISAAC D. SEELEY.

What constitutes a *non-resident*, within the meaning of the law relating to *attachments ?*

Where the defendant, a merchant, doing business at Hornellsville in this state, where he owned real estate, and where he and his family resided, in September, 1854, took from his store a large portion of the goods, and went to Hudson, Wisconsin, with the intention and expectation of disposing of them more readily for cash, to pay his debts; and if the trade proved to be good, to continue his trade there in charge of a clerk, and to return himself and continue his business in this state—retaining, in the meantime, his store and business at Hornellsville, in charge of a clerk, where his family remained—intending, as he wrote to his creditors, to return in the spring of 1855, but did not actually return until July, 1855,

*Held*, that the defendant was a resident of this state on the 29th of June, 1855, when the plaintiffs, his creditors, issued an attachment against his property at Hornellsville. He was only temporarily absent for a single purpose, which, from its nature, would not *keep* him away from the process of our courts.

The probable design of the defendant, as appeared from the affidavits, was to go to Wisconsin only for the purpose of selling out the one adventure; and if a branch should be established there, to leave it under the charge of a clerk, and for the defendant to return to this state. Notwithstanding it appeared that the defendant, in one his letters to his creditors, says, " To avert the fulfilment of this picture, I have forsaken, for the time being, home, wife, children, and friends, and have commenced business upon the very outskirts of civilization."

ROOSEVELT, Justice, dissenting. Holding, that a man, so far as the law relating to attachments is concerned, may travel without apprehension; but the moment he ceases to sustain the character of a traveller, and, for purposes of education or business, takes up a fixed, though temporary abode, he becomes, for the time being, a resident abroad; and, as a consequence, for the time being, in the eye of the law, a non-resident at home, and liable, as such non-resident, to have his property, which he has left behind, attached for the payment of his debts.

*New-York Special Term, Sept., 1855.*

APPEAL from an order at special term, setting aside an attachment issued in this action.

The attachment was issued by Judge ROOSEVELT, the 29th

of June, 1855; it recited that it appeared by affidavits that a cause of action existed against the defendant; that he was "*not a resident of this state*," but resided at Hudson, in the county of St. Croix, Wisconsin, &c., and commanded that his property be attached, &c. This attachment was served by the sheriff of Steuben; but on the 10th of August it was set aside by Judge CLERKE, on defendant's motion, at special term. No opinion was written by the judge, but it was understood to have been decided on the ground that the defendant was not a non-resident, but a resident of this state at the time of issuing the attachment.

The attachment was issued on the affidavits of Theodore Parker and others, all made the 29th of June aforesaid. These affidavits show, amongst other things, " that the defendant left the state of New-York in September, 1854, and established himself in business, as a merchant, in the town of Hudson, St. Croiz county, Wisconsin, and that he has, ever since the month of September, 1854, continued to reside, and now does reside in the said town of Hudson." That he was "not a resident of this state, but " was a resident of said Hudson.

Various affidavits were read on the part of the defendant, on the motion at special term, and several new ones on the part of the plaintiffs.

The facts, as shown by the affidavits, taken altogether, are, that in April, 1853, the defendant resided with his family at Hornellsville, Steuben county, in this state, where he was engaged in merchandising, and in the manufacture and sale of clothing. He lived in a house for which he had a contract of purchase, and owned the store in which he carried on business. He had a branch store in Wellsville, Allegany county, in this state. He had resided at Hornellsville since 1850, and continued to reside there until September, 1854. In the summer of 1854, the defendant went west, in search of a place where he might do a more extensive business, and in July fixed on Hudson, in St. Croix county, Wisconsin, as such a place, and then made up his mind to open a store there. In September of that year, having broken up his branch store in Wellsville,

Hurlbut and others agt. Seeley.

the defendant took a large stock of goods from his store in Hornellsville, and went with them to Hudson, where he opened a store and went into trade, which was continued to the time when the attachment issued, the defendant being there in charge of said store the whole time : his family, however, remained at Hornellsville, keeping house as usual—the store in Hornellsville being kept up in charge of a clerk or agent of said defendant. When the defendant left Hornellsville, in September, 1854, he intended, according to the affidavits on his side, to go to Hudson, and remain until he had disposed of the goods he took with him, and others which he intended to purchase while there; and if he found Hudson a good place, to continue his trade there in charge of a clerk. When he left Hornellsville, he expected to return in the spring of 1855, but he did not return until July. The affidavits on the part of the plaintiffs show that the defendant intended, when he went to Hudson, if he succeeded in business, to take up his permanent residence there.

JOHN LIVINGSTON, *for plaintiffs.*

I. If the defendant " was not a resident of this state " when the attachment was issued, it was regular. (*Code*, 1851, §§ 227, 229.)

II. It is not denied that the defendant's *domicil,* when the attachment issued, was in this state, but he was not then a *resident* here; his *residence* was at Hudson, Wisconsin. (*Code*, 1851, §§ 227, 229; 2 *R. S.* 3, § 1, *sub.* 2–5; 1 *R. L.* of 1813, *p.* 163, § 23; *In the matter of Thompson,* 1 *Wend.* 43; *Frost* agt. *Brisbin,* 19 *Wend.* 11; *In the matter of Wrigley,* 8 *Wend.* 140; *Code,* § 100; *Haggart* agt. *Morgan,* 1 *Seld.* 422; *Ford* agt. *Babcock,* 2 *Sand. S. C. R.* 518; *Cole* agt. *Jessup,* 10 *How. Pr. R.* 515; *in the court of appeals; Rosevelt* agt. *Kellogg,* 20 *John.* 210; *Drake on Attachment,* §§ 80, 81, 82, 83, 84, 85, 86; *Moore* agt. *Budd,* 4 *Hag. Ec. R.* 352; *Stanley* agt. *Barnes,* 2 *Hag. Ec. R.* 437; *Graham* agt. *Johnson,* 3 *Ves. J.* 198;

*Shedden* agt. *Patrick*, 28 *Eng. L. & E. R.* 64; 1 *Kent.* 6*th ed.*, 78; *Bur. Law Dic.—Residence.*)

III. The affidavits on which the attachment was issued established everything necessary, and as the judge who issued the attachment thus had jurisdiction, and the attachment was regular, it cannot be set aside on motion founded on new affidavits. (*Conklin* agt. *Dutcher*, 5 *How. Pr. R.* 386; *Bank of Lansingburgh* agt. *M'Kie*, 7 *How. Pr. R.* 360.)

A. J. PERRY, *for defendant.*

MITCHELL, Justice. The defendant's property was attached on the ground of his being a non-resident of this state. The original affidavits were in general terms, alleging that the defendant had established himself in Wisconsin, and become a resident there—and were *prima facie* sufficient. The defendant moved to set aside the attachment, and produced various affidavits to show that, although he had gone to Wisconsin, it was only for a temporary purpose.

It was understood, on the argument, that the real question was, whether the defendant had gone away on a single adventure to dispose of certain goods, and remained with that single purpose, or had gone or remained there with the intention not only of selling what he took with him, but of establishing there a business which *he* himself should *there* superintend. He had a store at Hornellsville, in this state, and another in Wellsville, and owned real estate here; and had a home here, where he and his wife and children lived. Business falling off very much, he concluded to close the store at Wellsville, and to send his principal clerk, with a portion of the goods from both stores, and some others to be purchased, to Hudson in Wisconsin, to dispose of them there, where sales, though at retail, were more ready, and for cash, and to retain his store at Hornellsville, and remain there with his whole family. This was approved by his creditors, and among others by the plaintiffs. This plan he afterwards changed, so far only that he should go in place of his clerk to Hudson.

He left the state in September, 1854, intending to return in the spring. Spring came, and he found his sales not so ample as he had hoped, and he wrote that he would return in June. After that he wrote that he would, without fail, and whatever the result might be, return about the first of July. Accordingly, on the 30th of June, he was on his way, in pursuance of that intention, for this state. Both his lawyers, who are partners, his physician, his principal clerk, his foreman, and two other clerks, and some acquaintances, with his mother and his wife, all concur that his original intention was, that he should go to Hudson only to open and commence sales, and with the sole purpose of disposing of .the goods and raising money to pay his debts; and that if the business there should be deemed profitable enough to justify the establishment of a branch there, then that Farrell, his chief clerk, "should go and take charge of such branch business, and continue it, and that the defendant *himself* should conduct the principal business at Hornellsville," in this state; and that he never expressed, nor did any of them understand, that he ever formed a different conclusion, except his intention to remain until about the first of July.

All this shows as clearly as could be, a fixed design to go to Wisconsin only for the purpose of selling out the one adventure, and if a branch should be established there, to have it under the charge of the clerk, and not of the defendant, and for the defendant to return to this state. In opposition to this is produced the defendant's letters; and the strongest expression there found against him, is one, when speaking of his efforts to prevent loss to his creditors, he says, " to avert the fulfilment of this picture, I have forsaken, for the time being, home, wife, children, and friends, and have commenced business upon the very outskirts of civilization." This, without any explanation, might show that the defendant had gone there to establish business, and to conduct it himself. But it is the only expression to that effect, and on its face shows that his absence was to be only temporary if the business was to be permanent: for he limits the duration of his absence in saying, " I have forsaken,

for *the time being*, home, wife, children, and friends." The concurrent affidavits of wife, mother, counsellors, clerks, phy- sician, and acquaintances, are not to be overweighed by that single expression, and they show that he was to be absent only to sell out the adventure which he took with him, or if he found the business there good, then to establish a branch there and return home, and leave the branch in charge of his clerk.

Then, as the special term found, he was still a resident of this state, and only temporarily absent for a single purpose, which, from its nature, would not *keep* him away from the pro- cess of our courts, the order of special term should be affirmed, without costs.

I concur in the opinion of Judge MITCHELL.

ROBERT H. MORRIS.

ROOSEVELT, Justice, *dissenting*. An attachment having been issued against the property of the defendant, as a non-resident debtor, was subsequently discharged by the judge, on the ground that the defendant not only had been, (which was ad- mitted,) but continued to be, (which was denied,) a resident of this state. From that order the plaintiffs appeal to the general term; and the question to be determined is, what, in these cases, constitutes non-residence?

The Code, in giving the remedy by attachment, where the party sued " is not a *resident* of this state," has furnished no specific definition of the sense in which it uses this much-liti- gated form of expression. We are left, therefore, in determin- ing its meaning, to the ordinary rules of interpretation.

Any person, it is well settled, may have his domicil in one place, and his residence, for the time being, in another. Thus a citizen of New-York may retain his dwelling in this city, with its furniture undisturbed, in charge of his ordinary domes- tics, for a year or more, while he is educating his children in Switzerland, and occupying a hired house in Geneva for that purpose. In such case, it is obvious, New-York continues to be the place of his domicil; and it seems equally obvious that

he becomes, notwithstanding, a temporary resident of the city of Geneva. But does it follow, say the defendant's counsel, that in becoming a temporary resident of Geneva, he becomes a non-resident, permanent or temporary, of New-York? May not a man have two residences at the same time time—a permanent and a temporary one? He certainly may. In the case put of one of our citizens living in Geneva, if asked what was his place of residence he would no doubt answer, using the term as synonymous with domicil, in New-York. This illustration, however, only shows that a man may *have* a *residence* in one place, and at the same time *be* a *resident* in another. And the statute does not say that the debtor's property shall be attached if he has *no residence in*, but if at the time he is *not a resident* of this state. Of what consequence, looking to the object of the law, is it to the creditor that his debtor has a residence, or a dozen residences, in this state, if he himself remains, for years perhaps, out of its jurisdiction, residing actually and personally in Paris or Geneva? Wherein, so far as the creditor's remedy for his debt is concerned, does such residing abroad differ, in its effect, from absconding or concealment? In either case the reason for attaching the *property* arises from the impossibility of summoning the person.

But this reason, it may be said, would apply equally to the case of a debtor merely travelling abroad. The answer is, that on account of the inconvenient restraint upon locomotion, which the allowance of an attachment in such cases would produce, the legislature have, in effect, excepted travellers from the provision. A man, so far as this law is concerned, may travel without apprehension; but the moment he ceases to sustain the character of a traveller, and, for purposes of education or business, takes up a fixed though temporary abode, he becomes, for the time being, a resident abroad; and as a consequence, for the time being, in the eye of the law, a non-resident at home, and liable, as such non-resident, to have his property, which he has left behind, attached for the payment of his debts.

I see nothing unreasonable in this rule; on the contrary,

while extending all due indulgence to the love of foreign travel, it shows no more than proper regard for the claims of domestic justice. Applied to the defendant's case, the attachment clearly was rightfully granted. He had left his family behind, it is true—but *they* could not be sued; and he had taken up a residence, and opened and kept a store for nine months and upwards in a distant state. I think it pretty evident, moreover, that had his anticipations been realized, his family would ultimately have followed him to their new home. In one of his letters to his correspondent, after visiting the west, he speaks of the place selected by him "to open a store," as a spot where he could "build up a large and profitable trade." In one of their letters to him, his correspondents inquire what, under the circumstances, will be the effect of his "moving,"—showing very clearly the sense in which they understood his declarations. And he, in his reply, instead of correcting this impression, as he no doubt would have done had he considered it erroneous, simply says that he does not "think his *leaving* here" —that is, leaving his original place of business—will have the effect of depreciating his existing property, as his friends suggested.

Five months afterwards, too, writing from the new "place which he had chosen,"—and in which he had, seemingly at least, established himself—after describing the probable consequences of a certain course of procedure, he observes, "Now, gentlemen, to avert the fulfilment of this picture, I have *forsaken, for the time being*, home, wife, children and friends, and have *commenced business* upon the very outskirts of civilization." Surely, the place of which a man could thus write before going to it, and which he could thus characterize after months of actual occupancy, must at least be his temporary residence. And if so, is he not, while personally at it, and far away from his original domicil, properly termed, for the time being, a nonresident of the latter—at least within the true spirit and meaning of the law of attachment?

If the inferences, thus drawn from the defendant's acts and correspondence, had been, to any material extent, erroneous, is

it to be supposed that, anticipating, as he no doubt did, their suggestion, he would have omitted to contradict them by his own affidavit?

On a question of residence, where, although not conclusive, so much depends on the, perhaps, unrevealed intents of the mind, the unexplained absence of the party's own affidavit,— he being permitted, if disposed, to be his own witness,—is a strong negative circumstance, amply sufficient, as it seems to me, even were the facts otherwise doubtful, to turn the scale against him.

My conclusion, as well on principle as on authority, is, that the defendant, at the time in question, was at least a temporary resident of Wisconsin, and not a resident of this state, and that the order vacating the attachment ought, therefore, to be revoked. (*See the cases cited in note at page* 203 *of Voorhies' edition of the Code.*)